WILLIAM DEUTSCH, Respondent, *v.* NATHAN ABELES
ET AL., Appellants.

April 29, 1884.

1. LANDLORD AND TENANT — NUISANCE — REPAIRS — DAMAGES. — In the
absence of any contract obligation of a landlord to keep rented premises
in repair, he can not be held liable for an injury to adjoining prem-
ises occasioned by the leaking of a water pipe which was in good repair
when the tenant took possession.

2. —— In the absence of a special covenant, a landlord is not bound to keep
rented premises in repair, but the obligation to do so rests upon a tenant
from month to month.

APPEAL from the St. Louis Circuit Court, HORNER, J.
*Reversed and remanded.*

G. W. TAUSSIG, for the appellant: The tenant alone is
liable for a nuisance on the rented premises. — *City v.
Kaime*, 2 Mo. App. 66; *Norton v. Wiswall*, 26 Barb.
618; *Lowell v. Spaulding*, 4 Cush. 277.

B. J. WERTHEIMER, for the respondent: The owner of
a freehold is liable for injuries resulting from the condition
of the freehold itself, whether in his actual occupation or
not. — *Eakin v. Brown*, 1 E. D. Smith, 36; *Bellows v.
Sackett* 15 Barb., 96; *Mayor, etc., v. Bailey*, 2 Denio, 433;
*Regina v. Watts*, 1 Salk. 357; *Ball v. Nye*, 99 Mass.
582. Where one erects a nuisance, or that which subse-
quently becomes a nuisance, and lets the premises to
another, he is liable precisely as though he had not demised
the premises and even though he can not enter lawfully to
abate it. — *Fletcher v. Rylands*, L. R. 1 Exch. 279, 282;
*Rosswell v. Prior*, 12 Mod. 639; *Thompson v. Gibson*, 7
M. & W. (Exch.) 456; *Phinizy v. The City of Augusta*, 47
Ga. 260. Where there is no covenant to repair on the part of
either landlord or tenant, where a nuisance results from
such want of repair, an action may be maintained against
either of them therefor. — Wood's L. & T. 618, 620;

*Swords* v. *Edgar*, 59 N. Y. 35; *Staples* v. *Spring*, 10 Mass. 79; *Shipley* v. *Fifty Associates*, 101 Mass. 251.

BAKEWELL, J., delivered the opinion of the court.

The petition in this cause contains the following allegations : —

Plaintiff owns and occupies a house erected upon a lot in the city of St. Louis. Defendant Abeles owns the adjoining house and lot, of which defendant Taylor is the lawful occupant. In March, 1882, the ownership and occupancy being as stated, water was permitted to flow from defendant's premises through the wall dividing them from those of plaintiff, into the cellar of plaintiff's house, flooding his cellar, injuring the health of his family, and damaging plaintiff's wall. Plaintiff notified defendants of the nuisance and damages thus occasioned ; but defendants neglected to stop the flow of water, or remedy the injury, whereupon plaintiff, so far as he could, repaired the cause of the water flow, and at his own expense, employed competent workmen to remedy the defects found to exist in the drainage system and water pipes on defendants' premises. After the repairs, the flow of water upon plaintiff's premises ceased until the 1st of January, 1883, at which time water was again permitted to flow through the partition wall aforesaid from the premises of defendants into those of plaintiff, flooding his cellar to the depth of three feet. Of all which defendant had notice, and neglected, for an unreasonable time, to abate the nuisance, until great injury had been done to plaintiff and his property by reason thereof. Plaintiff was compelled at great expense to employ workmen to remove the water from his premises. Plaintiff has demanded of defendant Abeles, that he reimburse him for the money so expended in repairs, but said defendant refuses to do so, and plaintiff has not been reimbursed by the defendants, or either of them. By reason of the unskillfulness

and negligence of defendants in the construction and management of the drainage system and water pipes upon the herein described premises of defendants, in not having the said drainage and water pipes properly repaired, taken care of, and secured, to prevent leakage and overflow, and in not connecting said division wall to prevent the percolation of water through the same, plaintiff's premises were greatly damaged as aforesaid, rendering the first floor untenantable, destroying property on the place, entailing great expense on plaintiff, and rendering his house unhealthful to his damage, two thousand dollars, etc.

Defendants filed separate answers; each was a genera denial, except that the defendant Abeles admitted that he owned the property described in the petition as his.

There was a verdict and judgment for plaintiff, for two hundred and twenty-five dollars.

It appeared that defendant Taylor had been in possession of the premises in question for several years, as tenant from month to month of Abeles. Plaintiff introduced evidence tending to show that several members of his family were ill in January and February, 1883, and that this illne ss was occasioned by the water in the cellar.

Plaintiff also introduced evidence tending to show that his cellar was flooded in March, 1882; and that the water came from defendants' premises; that several men were employed fifteen days to pump it out, and a plumber was also engaged. The cellar was full again in January, 1883, and the plumber was again employed. The plumber was paid by plaintiff for the services rendered, two bills of $48 and $90. Plaintiff also paid $5 for pumping in March, 1882, and $2 a day for eight days pumping in January, 1883. There is nothing in the testimony for plaintiff as preserved in the bill of exceptions to show that the water came from any leak in the pipe on defendants' premises.

The plumber says he thought the leak might be in the

pipe on defendants' premises and that the hydrant was " old style" and "played out." But he nowhere states that he found the leak, or that he found any leak at all. Nor does he say whether the hydrant of which he speaks was in plaintiff's yard or in that of defendants.

It appears. from the testimony for defendant that the leak was in the lead pipe leading from the rear cellar to the hydrant in the yard on the premises of defendant, and that the escape of water was stopped by turning off the water from the hydrant in the yard, which was done without interfering with the water going into the kitchen.

All testimony as to any occurrences in March, 1882, was introduced against the objection of defendants that it was incompetent because the petition does not allege that plaintiff was injured by any misconduct of defendants at that time, nor claim any damages for any flow of water then, and that under the pleadings there can be no recovery on account of anything that happened in March, 1882.

Plaintiff introduced testimony that there were three cracks in the cellar wall in January, 1883, which did not seriously affect the wall ; but the witness did not say that they were occasioned by the overflow, but said that they were perhaps occasioned by simple settling when the walls were built.

At the close of plaintiff's case, and at the close of the whole case, defendants interposed demurrers to the evidence, which were overruled. At the instance of plaintiff, the court instructed the jury as follows : —

" If the jury believe from the evidence that plaintiff owned and occupied premises No. 2707 Walnut Street, and that defendant Abeles is the owner, and the defendant Taylor is the tenant of premises 2709 Walnut Street, and that before the filing of this suit, defendants permitted water to flow from their premises, No. 2709, over to plaintiff's premises, and that after notice by plaintiff to defendants thereof, defendants failed in a reasonable time to stop the same, and

that such water flowed from defendants' premises on to plaintiff's premises and into the cellar thereof, rendering the enjoyment of plaintiff's premises and his family's lives therein disagreeable or unhealthy, the jury should return a verdict for plaintiff and assess his damages at such sum as they believe from the evidence he has suffered in the enjoyment of life and the occupation of said dwelling in consequence of such flow of water. And are further instructed that, in assessing damages they may consider the inconvenience of his life and the injury to the possession of his dwelling as stated in the evidence, and upon the whole case, return for plaintiff such sum of damages as they may believe from the evidence he has suffered from such nuisance prior to the institution of this suit.

"If the jury believe from the evidence, that the defendant Abeles owned the premises 2709 Walnut Street, and plaintiff owned the premises 2707 Walnut Street, and that prior to the institution of this suit, water flowed from defendants' on to plaintiff's premises by reason of the negligence of defendant in not keeping his water pipes, sewer pipes, or hydrant in repair, and that, after notice by plaintiff, defendant failed to repair said pipes or hydrant as far as he could have done, and that plaintiff's premises were damaged by reason of such flow of water, and that plaintiff's family were made sick at the time stated in the petition by reason of, and as a direct consequence of, such flow of water on to said premises, and that plaintiff was obliged to expend money to repair his premises or to pump out said water from his cellar, then you will find for plaintiff, and assess his damages at such sum as you believe from the evidence he has been injured, not to exceed in all the sum of $2,000."

The court also gave instructions at the instance of defendants, to the effect that, if defendants used reasonable care, and the injury complained of was the effect of inevitable accident, plaintiff can not recover, and that the burden

of showing negligence is on plaintiff, and also an instruction as to contributory negligence.

The court refused instructions to the effect that there could be no recovery against Abeles, unless he had agreed to repair ; that, on the evidence, there could be no recovery against Abeles, and that, on the evidence, there could be no recovery against Taylor, and that there could be no recovery for damages or expense occasioned to plaintiff by sickness in his family caused by the water in his cellar.

If a nuisance had been on the premises at the time they were let, or if the water pipes were then leaking, the landlord as well as the tenant might have been liable for damages resulting to plaintiff therefrom, even though the defective water pipes only became a nuisance by the act of the tenant in using them for ordinary purposes. But nothing of that kind is shown. The nuisance appears not to have necessarily arisen from the proper use of the thing demised. A water pipe is not a nuisance, though it may become so if water is suffered to flow from it after it has burst. If the landlord were liable at all, he might be joined with his tenant as defendant where the tenant continued a nuisance which the landlord created. But, in the absence of anything tending to show any obligation on the part of the landlord to repair, we do not see how he can be held liable for a nuisance created by his tenant in permitting water to flow through a bursted pipe which does not appear to have been in bad order when the tenant took possession. The landlord's liability in respect to the possession is suspended, except as to matters of defective construction existing when the premises were let.

The general rule undoubtedly is, that the landlord is not liable for a nuisance created by the act or neglect of his tenant. There are, indeed, many cases in which the landlord may be liable for an injury to a stranger from the defective condition of the premises, notwithstanding the demise by which he has parted with the actual present possession of them ;

but these cases will be found not to have any application to the facts before us. The landlord has been held liable, for instance, for injury to a stranger arising from a defective construction of the roof, occasioning a dangerous fall upon the street of accumulated snow (*Shepley* v. *Fifty Associates*, 101 Mass. 251); or for injury from a part of the building not under the control of the tenants (*Ibid.*); or, where the premises were rented in an unsafe condition. *Sunds* v. *Edgar*, 54 N. Y. 28. Or, perhaps, as in the last case, where the character of the demised premises, as a pier for discharging ships, is such, and their use such that a general license for all to come and go is necessarily implied from use to which they must be put and for which they are demised.

A tenant from month to month, or for any determinate term less than a year, is a tenant for a year — a year being the shortest term of which the law in this case takes notice.

The tenant from year to year is liable for negligent waste. He is bound, in the absence of any special contract on the subject, to make fair and reasonable repairs; to restore, for instance, doors and windows broken during his occupancy. He is not bound to make substantial or lasting repairs, or what are called general repairs, such as putting on a new roof; nor is he bound to repair every accidental injury to the premises, though he must keep them in as good repair as they were when he entered, ordinary wear and tear excepted. For these general principles it is only necessary to refer to the ordinary text-books. Taylor's L. & T., sect. 363; Wood's L. & T., sect. 368. There can be no dispute about them. Nor, in the absence of a covenant, is the landlord bound to put, or preserve, the premises in tenantable condition, as to repair the roof when leaking badly. *Vai* v. *Weld*, 17Mo. 232. It may be said that the tenant in the present case was not bound to repair the water pipes on the premises, if by accident they became defective, or if they leaked from

long use.   We do not say that he was under any obligation to his landlord, especially if the repair required would be considerable and the expense great.   Neither can we say that the landlord was under any obligation to him to make such repairs.

But, if the landlord was not bound to make repairs in this case (and there is nothing in the evidence from which it can be declared as a matter of law that he was so bound), it was the duty of the tenant not to admit water into the pipes whilst they were in a condition so defective that the admission of water necessarily caused a flooding of the cellar of the adjoining house.   The testimony is that the water could easily be turned off by the tenant, and that it might readily have been turned off so as to stop the escape of water on the premises without cutting off the water supply from the house.   This being the uncontradicted testimony on this point, it seems clear that the case presented was not of a joint liability of the landlord and tenant for an injury to an adjoining proprietor for a nuisance created and suffered to remain upon the demised premises.   That the owner repaired the defective pipe in March, imposed upon him no obligations to make similar repairs when the leakage was renewed.

The petition is radically bad for other reasons and would not support the verdict.   No damages are asked on the first count for the nuisance in 1882, and plaintiff was improperly allowed to show the expense incurred by him in consequence of the first overflow.   But it is unnecessary to dwell upon the various errors presented by the record.

The instructions given were not warranted by the undisputed facts in evidence, and the instructions that on the pleadings and evidence plaintiff is not entitled to recover should have been given as asked.

The judgment is reversed and the cause remanded.   All the judges concur.