T. J. P. GRIFFITH ET AL., Plaintiffs in Error, *v.* M. D. LEWIS, Administrator, Defendant in Error.

### May 5, 1885.

1. NEGLIGENCE—NUISANCE—DAMAGES—MEASURE OF.—One who collects on his property a substance which subsequently becomes a nuisance, is liable only for the damages which occur after he has had a reasonable time after notice thereof within which to abate the nuisance.

2. —— PLEADINGS.—Under a petition which charges that the defendant knowingly maintained a nuisance, and negligently permitted it to remain, there can be no recovery for any damage which was caused prior to the defendant's knowledge of the existence of the nuisance.

3. ——LANDLORD AND TENANT—REPAIRS—A tenant from month to month is not liable for damages to adjacent property occasioned by the percolation of foul water from a vault in consequence of the decay of the materials of which the vault was built.

4. LANDLORD AND TENANT—TERM. OF HOLDING.—A tenant who holds under a prior letting or who holds over under a written lease without renewing it, is a tenant from month to month.

5 PRACTICE—NOMINAL DAMAGES.—Where the right to recover nominal damages is shown by the evidence it is error to take the case from the jury.

ERROR to the St. Louis Circuit Court, LUBKE, J.
*Reversed and remanded.*

DANIEL McGOWAN and A. R. TAYLOR, for the plaintiff
in error : This tenancy from the deceased owner was from
month to month, not being in writing after 1881, *and be-
ing in this city.*—Revised Statutes, sect. 3078. The
holding over after the end of the written lease of 1881, was
only a tenancy from month to month.—*Hammond* v.
*Douglass*, 50 Mo. 444. If premises were in a defective
condition at the time of making lease, and injury en-
sued therefrom to plaintiffs, they could hold at their
election either lessor or lessee.—1 Thompson, Neg., 317,
sect. 12, note 7, with authorities cited. As this tenancy
was monthly after the year 1881, the lessor was liable
for a nuisance existing upon each monthly renewal of
lease.—1 Thompson, Neg., 319 ; Wood, Landlord and
Tenant, 917,918. To suffer filthy water from a vault to
percolate through the soil to the injury of an adjoining
proprietor, where the owner of the property on
which the nuisance exists has notice is actionable.—*Ball*
v. *Nye*, 99 Mass., 582.

EDWARD WHITE, for the defendant in error : In the
absence of covenants, a tenant is bound to keep the
rented premises in repair.—*Deutsch* v. *Abeles*, 15 Mo.
398 ; *Padberg* v. *Kennerly*, 16 Mo. App. 556. And a
nuisance arising from non-repair is the nuisance of the
tenant.— *Vai* v. *Weld*, 17 Mo. 232 ; Wood, Nuisances,
950 ; Taylor, L. & T. sect. 175, and cases cited *supra*.

THOMPSON, J., delivered the opinion of the court.

This was an action for damages for a nuisance. At
the close of the plaintiff's testimony the court directed
the jury that the plaintiff could not recover.

The substantial averments of the petition were that
the plaintiff, Mrs. Griffith, was the owner of certain
premises in the city of St. Louis ; that the defendant's
intestate, Mrs. Mulford, "was on or about the 15th day
of February, 1880, and for a long time before and ever
since till the time of her death, hereinafter mentioned,

the owner and in possession of a lot of ground immediately adjoining and abutting against the above described premises ; that on said lot of ground is erected a tenement house with a privy vault which is sunk at great depth in the ground ; and that by old age and long usage, it became worn out, leaky, and dilapidated, defective and out of repair * * * ; that defendant knowingly maintained the privy vault upon said lot in said condition, and wantonly and intentionally permitted it to remain full of water, excrement, and filth. That said tenement house, with the nuisance on said lot, was rented out, from time to time and from month to month, to tenants by said defendant'' (meaning the defendant's intestate, Mrs. Mulford, and the defendant, J.E.Kaime, her agent as to whom the suit was subsequently dismissed). Then, after an averment touching the condemnation of the premises as a nuisance by the Board of Health under an ordinance of the city, the petition further avers "that, on or about the 15th day of June, 1882, and for a long time before and ever since, till about the 15th day of March, 1883, the foul water and filth of said privy vault as aforesaid, percolating and siping through the ground of said defendant and through the walls of the plaintiff's dwelling house and hotel and into the cellar and basement and ascending therein to the height of several feet, and thereby causing the walls of said house and hotel to be greatly weakened, split, and fractured and the floor of said basement and cellar to be rotted; that by reason of the unwholesome vapor arising from the foul and stagnant water in said cellar and basement and ascending in and around said premises, the health of the plaintiff's, of their family, and of the inmates of their house and hotel has been and is greatly impaired and injured and the business of said plaintiffs in consequence thereof has suffered great loss. Wherefore, by reason of said loss and injuries to plaintiffs they were and are damaged in the sum of two thousand dollars for which sum plaintiffs ask judgment.''

The answer of the defendants was a general denial.

According to the language of the bill of exceptions, the plaintiff gave evidence at the trial tending to prove :

1. "That the plaintiff, Teresa J. Griffith, was the owner as separate estate of the lot numbered 309, South Third Street, St. Louis, and the house thereon, and had owned, and with her said husband, occupied same since the year 1879, being the same premises mentioned in the petition.

2. "That Ruth H. Mulford, deceased, was, on the 15th day of February, 1880, and prior thereto and up to, the time of her death, January 19th, 1883, the owner of a lot of ground fronting on Myrtle Street and running southward to and abutting against the premises of the said Teresa J. Griffith.

3. "That about the year 1880 there began to be a drainage underground from a privy vault on the said premises of Ruth H. Mulford, on to the premises of said Teresa J. Griffith, which underground drainage continued up to December, 1882, when said privy vault was repaired.

4. "Plaintiff gave evidence showing positively that said premises of Ruth H. Mulford (the defendant's intestate) was occupied and controlled by a tenant continuously from the year 1879 until the death of said Ruth H. Mulford and up to the date of filing this suit; but there had never been but one written lease of the premises which was for a year, in the year 1881. Prior to that year and subsequent to that year, there had been no written lease or tenancy except oral, and the rent was payable monthly.

5. "That plaintiff gave further testimony tending to show that in the year 1882, in March, plaintiffs located the point from whence the underground drainage emanated, at the privy vault on the said premises of Ruth H. Mulford, and thereupon immediately gave notice to J. E. Kaime & Bro., real estate estate agents having charge of the collection of the rents of the said premises for said Mulford, of the defective condition of said premises ; and thereafter, in May, gave notice of the defective condition of said privy and that same was a nuisance, to the Board of Health of the city of St. Louis.

6. "That in June, 1882, plaintiffs instituted an action for damages against Ruth H. Mulford before a justice of the peace on account of the maintaining of said defective privy vault, and the injury to plaintiff's property thereby; that said Ruth H. Mulford was served with process in said suit, but, without any trial of said suit, the same was dismissed.

7. "That the cause of said underground drainage was the defective condition of the privy which had existed since 1880 and grew worse until December, 1882, when it was repaired—it being worse and doing plaintiff's premises serious injury in the spring and fall of 1882.

8. "That plaintiff's house and the cellar thereunder were damaged by the filthy water and substances from the privy vault percolating through the earth into the walls of the basement, causing the walls of the house to crack, and to be permanently injured, and the premises of plaintiffs to be damaged in the sum of fifteen hundred dollars. That most of the damage occurred to the premises after June, 1882, and up to December, 1882, when said privy vault was repaired."

The error complained of is that the court withdrew the case from the jury.

An analysis of the above statements of fact will make it clear that the plaintiff's evidence did not tend to show that the defendant's intestate had any notice of the existence of the nuisance until the month of June, 1882, for although it is alleged that notice was given to Kaime (the defendant's agent) in March, 1882, yet it does not appear in what respect Kaime was the agent of the defendant's intestate at that time, if at all, and it therefore did not appear that he was her agent to receive notice of the defective condition of her premises so as to charge her with liability therefor; and, of course, notice to the Board of Health was not notice to her. On the contrary, the bringing of the action before the justice in June, 1882, and the personal service of process

upon her in such action was as far as the record shows, the first notice to her of the existence of the nuisance on the premises, and of the fact that it was causing damage to the plaintiffs.

Now, it appears from the allegations of the petition, and from the above statement of facts proved, that the injury was caused by an underground drainage or sipage from a deep vault on the premises of the defendant's intestate in consequence of the same being old, worn out, and out of repair. This negatives the idea that the injury complained of arose from an originally defective construction of the vault; but, on the contrary, the existence of the nuisance is alleged to have arisen from a failure to repair. We suppose that it will not be disputed that the owner of premises, in such a case, will not be liable for the damage caused by such a nuisance until he has knowledge of it; because, while the owner of premises which are inherently of such a character that unless watched and kept in repair they are likely to lead to mischief, may be under a continuing duty of inspection and watchfulness, yet this can not, we think, be said concerning the owner of an ordinary tenement house in respect to a vault of this kind, originally well constructed, but from which the water, after long usage, gradually insinuates itself through the soil, so as to reach and cause damage to the premises of an adjacent owner. Until such premises are reached, or perceptibly affected by the percolating liquid, and the owner or tenant of the premises from which it flows receives notice thereof, he will not acquire knowledge of it by the exercise of the ordinary care which landlords or householders bestow in respect of the reparation of their premises. The doctrine of *Rylands* v. *Fletcher* (L. R. 3 H. L. 330) that a person who artificially brings on his land and collects and keeps thereon some substance liable to do mischief if it escapes, must keep it in at his peril, does not seem to have been generally accepted in this country; but if it were the law with us, it manifestly would not apply to a structure of the simple and every

day character of the one here in question, the object of which was not to collect and retain a quantity of water, but to afford the means of discharging it from the premises in which it was dug.   Undoubtedly, the owner or occupier of the premises is liable to an adjoining owner for such a nuisance.—*Ball* v. *Nye*, 99 Mass. 582.   But on principle he is liable only on the ground of negligence ; and therefore, as the progress through the soil of the substance which does the injury is secret and insidious and of a nature to elude inspection, he is not liable until he have notice that it has produced an injury, and then he is only liable for the subsequent damage which may ensue by his permitting it to continue after a reasonable time to repair.

But there seems to be no doubt that the damages which can be recovered in this case, are limited by the terms of the petition to such as accrued after the defendant's intestate received notice of the nuisance to the plaintiff's premises ; because the petition in terms alleged "that defendant *knowingly* maintained a privy vault upon said lot in said condition, and wantonly and and negligently permitted it to remain full of water, excrement, and filth." It is thus perceived that the gravamen of the injury charged is *knowingly* maintaining a nuisance, and the subsequent use of the words "wantonly and negligently" does not operate to change this characterization of the wrong ; because negligently to suffer a nuisance to remain after knowledge of it may of itself be wanton.   The gist of the wrong charged is that the defendant's intestate suffered the nuisance to continue after knowledge of its existence, and the law is not concerned with the intention with which she suffered it to continue. Whether she did it from a malicious desire to injure the plaintiff, or from mere carelessness or neglect, is a question which may affect the extent, but cannot affect the right of recovery.   It is manifest that, under this petition, the plaintiff cannot recover merely by proving that the defendant's intestate was under a duty of knowing of the nuisance, and might have discovered it by the ex-

ercise of ordinary care, if she had performed that duty. Even if there had been an allegation making such evidence admissible, there is nothing in the facts set out which raises on the part of the defendant's intestate a continuing duty of inspection in respect of this vault, for the purpose of seeing whether the water was not percolating *in some direction* through the soil towards the premises of some coterminous land owner. Such an inspection would obviously require the digging up of the ground on all sides of the vault down as far as it had been excavated. Such an operation would tend to produce the very mischief against which it was intended to guard ; and, as no land owner ever undertakes such an inspection, the very suggestion of a duty of this kind is absurd. The conclusion therefore is unavoidable that, upon the case made by the pleadings and the evidence, the defendant is liable for no other damages than those which accrued after his intestate, received notice or acquired knowledge of the existence of the nuisance, and a reasonable time had elapsed thereafter within which she might have repaired the same.

In cases of this kind there is generally a question whether, in case the injury proceeds from premises occupied by a tenant, the landlord or the tenant is liable, or both. The general rule is that, where the injury proceeds from the ordinary use by the tenant of premises defectively constructed, the landlord will be liable as the author of the nuisance (*Padberg* v. *Kennerly*, 16 Mo. App. 556), though this does not necessarily exclude the liability of the tenant also ; and that where the premises are demised for a fixed period of time and the nuisance happens in consequence of the non-repair of the premises, the tenant and not the landlord will be liable, unless the non-repair which produced the injury was of such an extensive or material character that, having reference to the duration of the term, the tenant cannot be presumed to have assumed to make it.—*Deutsch* v. *Abeles*, 15 Mo. App. 398. In this case the plaintiff's evidence was to the effect that the injury from the nuisance

began in February, 1880, at which time the premises of the defendant's intestate were in the possession of a tenant under a parol letting, paying rent from month to month ; that it continued during that year and also during the year 1881 ; that during the year 1881 the premises from which it proceeded were held by the same tenant under a lease for a year ; that, after the expiration of this lease, as we infer from the statement of facts, the same tenant continued to hold the premises under a parol letting, paying the rent monthly, as he had done before the lease. This being so, he was under the statute (Rev. Stat., sect. 3078) a tenant from month to month, not only before the lease, but while holding over after it.—*Hammon* v. *Douglas*, 50 Mo. 442 ; *Merchant's Bank* v. *Clavin*, 60 Mo. 559, 561. It follows therefore, that at the time when the defendant's intestate first received notice of the existence of the nuisance, in June, 1882, as above stated, the premises were in the possession of a tenant from month to month. A tenancy from month to month under the above statute is merely a tenancy at will with the qualification that the tenant cannot be compelled to surrender the premises except upon the giving of a month's notice to quit. It is true that in *Deutsch* v. *Abeles* (*supra*) it was said by Bakewell, J., that "a tenant from month to month, or for any determinate term less than a year, is a tenant for years ; a year being the shortest term of which the law in this case takes notice"; yet this was said *arguendo*, with reference to a supposed rule of the common law, and in saying it the learned judge did not seem to take into consideration the existence of the above statute, which distinctly recognizes a tenancy from month to month. In a subsequent case we held, upon a well-considered English authority (*Gandy* v. *Juber*, 5 Best & Smith 78) that in the case of a tenancy from month to month there is at the commencement of every month, in contemplation of law, a new letting. That rule, it seems to us, is more consonant with the respective duties of landlord and tenant in respect to the rights of adjoining

land owners, than a rule which, by a fiction, enlarges the
term of a tenant, holding merely at the will of the land-
lord and liable to be ejected after a month's notice, to a
term for years, and which makes him *prima facie* liable
to third persons for injuries resulting from a non-repair
of the premises.   Where the extent of the term which
the tenant has in the premises is but thirty days, the value
of which may be a few dollars only, a rule which would
make him liable to make any repairs except those of a
trifling or temporary character, such as the restoration
of window panes broken by him or the like, would not
only be absurd and unjust, but would be contrary to
what we know to be the general practice in the cases of
such tenancies in this state.   In the present case a rule
that would make a tenant from month to month of a
tenement house liable to repair a privy vault which had
become dilapidated in consequence of years of decay,
which repair might and probably would cost several
times the amount of a month's rent, would be highly
absurd.

If we could stop here we would say that, for the rea-
sons above given, the plaintiff made out a case to go to
the jury.   But it seems to us that there was a defect in
his proof of damages, such as, if the case had gone to the
jury, must have required the court to set aside any ver-
dict which they might have rendered for more than nom-
inal damages.   Referring to the statement of facts which
the plaintiff's evidence tended to prove, it will be per-
ceived that these facts were, that the injurious percola-
tion had continued for nearly three years, namely, from
February, 1880, until December, 1882, and, in the lan-
guage of the bill of exceptions, had caused the
premises of the plaintiff to be damaged in the
sum of $1,500, most of which damage occurred
after June, 1882, and up to December, 1882, when
the vault was repaired.   Now, this proof of damage was
of such an indefinite character that the verdict in its
award of damages must have been merely a matter of
conjecture.   Supposing the jury had returned a verdict

of $1,500, it must have been set aside, because the above facts show that a part of the damage only occurred during the period for which the defendant's intestate was liable. Suppose they had returned a verdict for $750 ; it must have been set aside because there was no evidence tending to show that one-half the damages had been received before and the other half subsequent to June, 1882. And so, if a verdict had been rendered for any other substantial sum, because there was no evidence whatever tending to show to what extent the plaintiff's premises had been damaged, subsequent to the time when the cause of injury was discovered and the defendant's intestate notified of it. Besides, in any view that can be taken of the evidence in respect of the damages, it covers the damages for the whole period of nearly three years, during one year of which the premises were shown to have been occupied by a tenant holding under a lease for a year, and he, not the landlord, would have been, had he received notice of the injury, *prima facie* liable to repair.

It thus appears that the plaintiffs were entitled to go to the jury, but that in the state of their evidence they were not entitled to recover more than nominal damages. The right to recover nominal damages carries with it the right to recover the costs of the action ; and therefore the ruling of the court which compelled the plaintiff to take a nonsuit was a denial to them of a substantial right, for which error we must reverse the judgment and remand the cause. It is so ordered. All the judges concur.